# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARMINSTER EQUITIES, LLC | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARMINSTER COMMERCE, LLC | : | NO. 10-520 |
| | : | |
| Defendant. | : | |

| | |
|---|---|
| WARMINSTER COMMERCE, LLC | : |
| Counterclaim/Third-Party Plaintiff, | : |
| v. | : |
| WARMINSTER EQUITIES, LLC | : |
| Counterclaim Defendant | : |
| and | : |
| ABINGTON SAVINGS BANK | : |
| Third-Party Defendant | : |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                          October 7, 2010

Currently pending before the Court is Defendant/Third-Party Plaintiff Warminster Commerce, LLC's Motion to Dismiss Third-Party Defendant Abington Savings Bank's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied in its entirety.

I.      **FACTUAL AND PROCEDURAL HISTORY**

This matter stems from a dispute over a commercial lease between Plaintiff Warminster Equities, LLC ("Equities") and Defendant/Third-Party Plaintiff Warminster Commerce, LLC ("Commerce"). Equities claims it has a leasehold interest in a parcel of land owned by Commerce. (Compl. ¶¶ 1-2.) The lease commenced in 1973 and had an initial term of twenty-seven years, but provided the lessee with the option of exercising seven consecutive ten-year extensions. (Id. ¶ 2; Id. Ex. A.) Equities's predecessor-in-interest exercised the option for the first ten-year extension on December 1, 1998, and assigned the leasehold to Equities on May 10, 2001. (Commerce's Am. Countercl. ¶¶ 11-12; Id. Ex. B-C.)

Equities, in apparent anticipation of acquiring this leasehold, had subleased the property to Commerce Bank (predecessor to TD Bank, the current tenant) on January 4, 2001 for an initial period of twenty years, with options to extend for four additional five-year terms. (Compl. ¶ 22; Id. Ex. C.) On May 24, 2001, Equities borrowed $2,400,000 from Third-Party Defendant Abington Savings Bank ("Abington") to make various improvements to the premises, including a pad site for the commercial bank branch. (Abington's Countercl. ¶¶ 16, 19; Compl. ¶¶ 19-20.) As security for the loan, Abington received a first priority lien on Equities's leasehold estate and the improvements made thereon, as well as an assignment of all rents received from tenants on the property. (Abington's Countercl. ¶¶ 17-18; Id. Ex. A-B.)

In April of 2009, Commerce informed Equities that it had not received written notice of Equities's intent to extend the lease for a second ten-year term, and that the lease would therefore expire on December 31, 2009. (Compl. ¶ 28.) Equities claimed that it orally informed Commerce of its intent to renew the lease prior to the December 31, 2008 option deadline, but

Commerce maintained its position that the lease had been terminated. (Id. ¶¶ 27-28.) On December 17, 2009, Commerce sent a letter to Abington explaining that Equities would no longer have an interest in the leased premises as of December 31, 2009, that the mortgage between Abington and Equities would expire on that date, and that Abington should satisfy the mortgage immediately after January 1, 2010. (Abington's Countercl. ¶ 25.) That same day, Commerce also informed sublessee TD Bank that Equities's lease would expire at the end of 2009 and that it should thereafter send all rent payments directly to Commerce. (Id. ¶ 26.) In letters dated December 22, 2009, December 23, 2009, and December 29, 2009, Equities informed Commerce, TD Bank, and Abington, respectively, of its position that it had properly exercised its option to extend the lease. (Compl. ¶ 36.) TD Bank advised Equities on January 28, 2010 that it would place its future rent payments into an escrow account until the dispute between Equities and Commerce was resolved. (Id. ¶ 39; Id. Ex. J.)

Equities filed a Complaint in this Court on February 4, 2010, seeking a declaratory judgment that its lease with Commerce remains in full effect. (Compl. ¶ 1.) In its Answer and Counterclaim, Commerce joined Abington to this action as Third-Party Defendant, and requested that this Court declare that Equities's lease expired on December 31, 2009 and that the leasehold mortgage held by Abington is satisfied or released. (Commerce's Am. Countercl. ¶¶ 3-35.) Abington counterclaimed against Commerce, seeking: (1) a declaration that its leasehold mortgage interest remains in effect or, if it is determined that Equities's lease has expired, that it maintains an interest in the improvements made on the premises or rents from those improvements; (2) a judgment against Commerce for conversion of collateral; and (3) a judgment against Commerce for intentional interference with contractual relations. (Abington's Countercl.

¶¶ 32-46.) Commerce filed the present Motion to Dismiss Counterclaims of Abington on July 8, 2010, and Abington filed a Response on July 29, 2010.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Commerce's Motion asks the Court to dismiss Count II (conversion of collateral) and Count III (intentional interference with contractual relations) of Abington's Counterclaim. (Commerce's Mot. Dismiss Countercl. 4-8.) Both the conversion of collateral and interference with contractual relations claims arise under Pennsylvania law. (Abington's Opp'n Mot. Dismiss Countercl. 5-9.) The Court addresses each claim separately.

### A. **Whether Abington Has Stated a Claim for Conversion of Collateral**

In Pennsylvania, conversion is defined as "the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and

5

without legal justification.'" Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (quoting Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968)). While conversion requires an intentional act affecting a chattel, the intent need not be specific; rather, a plaintiff must merely show "an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987). "Money may be the subject of a conversion," but "only where the plaintiff had a property interest in the money at the time of the alleged conversion." Kia v. Imaging Sciences Int'l, Inc., No. CIV.A.08-5611, 2010 WL 3322696, at *9 (E.D. Pa. Aug. 20, 2010) (citations omitted).

In the instant case, the subject of the alleged conversion is the monthly rent paid by the sublessee, TD Bank. In its Counterclaim, Abington states that these rental payments were assigned to it by Equities as partial collateral for a loan. (Abington's Countercl. ¶¶ 16-23.) Abington alleges that Equities's leasehold is still valid, and that Commerce had no authority to disturb the agreements Equities made in connection with the leasehold, including the assignment of rents. (Id. ¶¶ 25-31.) Therefore, when Commerce sent the letter to TD Bank with instructions to send all future rental payments directly to Commerce, Abington claims that Commerce converted funds to which Abington had a legal right. (Id. ¶¶ 39-42.) As a result, the Counterclaim states that Abington "has suffered and/or will suffer loss of collateral, loss of revenue, and other damages." (Id. ¶ 42.)

Accepting all factual allegations in the Counterclaim as true and viewing them in the light most favorable to Abington, the Court finds that Abington has stated a claim for conversion. First, as noted above, money may be the subject of a conversion if the claimant had a property

6

interest in the funds at the time the alleged conversion occurred. Kia, 2010 WL 3322696, at *9. Here, the rental payments had been assigned to Abington well before Commerce sent its letter to TD Bank, so Abington has established a pre-existing property interest in the money. Second, as set forth above, a sufficiently pleaded claim for conversion must demonstrate that the defendant deprived the claimant of a property right, or otherwise interfered with that right, without the claimant's consent or other legal justification. Universal Premium, 69 F.3d at 704. Under a reasonable reading of the Counterclaim, Abington has alleged that it is no longer receiving the rent payments assigned to it by Equities, that the cause of this deprivation was Commerce's letter to TD Bank, and that Commerce had no legal justification to demand the rent. Therefore, the Court finds that Abington has sufficiently pleaded a claim for conversion.[1]

**B.     Whether Abington Has Stated a Claim for Intentional Interference With Contractual Relations**

In Pennsylvania, which follows the Restatement (Second) of Torts, a claim for intentional interference with existing contractual relations is defined as follows:

---

[1] Commerce argues that the conversion claim must be dismissed because Abington has not alleged any damages and because TD Bank has not paid any rents to Commerce. (Commerce's Mot. Dismiss Countercl. 5.) As to the first part of Commerce's argument, damages are not included as an element in the Third Circuit's definition of a conversion claim. Universal Premium, 69 F.3d at 704; see also Seymour v. Life Care Retirement Cmtys., Inc., No. CIV.A.09-0444, 2010 WL 2521004, at *5 (W.D. Pa. June 21, 2010) ("damages are not an element of conversion under Pennsylvania law."). Even if damages were a necessary element of a conversion claim, the Court finds that Abington has pled damages in the form of lost rent money.
   Next, in making its claim for conversion, Abington was not required to allege that TD Bank has paid its rent to Commerce. Rather, all Abington had to claim was that Commerce, without legal justification, deprived Abington of a property right. By alleging that it is no longer receiving rent payments as a result of Commerce's improper actions, Abington has satisfied this burden.

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss to the other from the third person's failure to perform the contract.

Binns v. Flaster Greenberg, P.C., 480 F. Supp. 2d 773, 778 (E.D. Pa. 2007) (quoting Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978)). In order to prevail on a claim for interference with contractual relations, the plaintiff must demonstrate the following: "(1) a contractual relation; (2) purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damage resulting from defendant's conduct." Gundlach v. Reinstein, 924 F. Supp. 684, 693 (E.D. Pa. 1996) (citing Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1047 (E.D. Pa. 1994)). The Court applies each of these elements to the present case.

### 1. Whether a Contractual Relation Existed Between Abington and TD Bank

In its Motion, Commerce argues that Abington's intentional interference with contractual relations claim must fail with respect to TD Bank because there is no contract between Abington and TD Bank.[2] (Commerce's Mot. Dismiss Countercl. 6.) However, even though there is no direct contract between these two parties, there is a contract (the sublease) between TD Bank and Equities. (Abington's Countercl. ¶¶ 20-22.) Equities assigned to Abington the rights to TD Bank's rent payments under this contract. (Id.) The Court finds that this assignment establishes a "contractual relation" between Abington and TD Bank for the purposes of an intentional

---

[2] Commerce's Motion does not question the existence of a contract between Abington and Equities, and the Court finds that Abington's Counterclaim sufficiently pleads a contractual relation with Equities. (Abington's Countercl. ¶¶ 16-23.)

8

interference claim. See Am. Soc. for Testing & Materials v. Corrpro Co., Inc., 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003) ("Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights.").

### 2. Whether Commerce Had an Improper Purpose or Intended to Harm Abington

The Counterclaim states that Commerce acted improperly by demanding that Abington satisfy its mortgage and that TD Bank send its rent payments directly to Commerce. (Abington's Countercl. ¶ 29.) Commerce contends that neither of these actions were "improper" and were not intended to harm Abington, and so Abington has failed to allege interference on the part of Commerce. (Commerce's Mot. Dismiss Countercl. 7.)

The question of whether conduct is improper involves a variety of considerations, such as "(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the one with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the proximity or remoteness of the actor's conduct to interference; and (f) the [parties' relationship]." Binns, 480 F. Supp. 2d at 779 (citations omitted). These factors indicate that the inquiry into whether behavior is improper is extremely fact-intensive.

At the pleading stage of the litigation, the Court lacks sufficient information to decide whether Commerce intended to harm Abington by demanding that Abington satisfy the mortgage and that TD Bank send its rent payments to Commerce. As such, the Court must once again look to the pleaded facts and construe them in a light most favorable to Abington. Abington alleges that Commerce treated Equities' lease as terminated, despite the fact that Equities exercised its option to extend, and thereafter attempted to eliminate Abington's mortgage on the leased

9

premises and obtain for itself the rent money paid by TD Bank. Assuming this is true, this conduct could be considered improper and designed with the intent to harm Abington. The Court therefore finds that Abington has sufficiently satisfied this element of its claim for intentional interference with contractual relations.

### 3. Whether Commerce's Actions Were Justified or Privileged

Whether or not Commerce was legally justified in demanding the satisfied mortgage from Abington and the rent payments from TD Bank goes directly to the main issue underlying this case, namely, whether Equities properly exercised its option to renew its lease with Commerce for an additional ten-year term. Because the Court has not yet decided whether Equities' lease is still valid, it cannot determine whether Commerce's alleged conduct was justified or privileged. Accepting as true Abington's claim that Commerce improperly treated the lease as terminated at the time it contacted Abington and TD Bank, the Court finds that Abington has adequately alleged that Commerce's conduct was not justified or privileged.

### 4. Whether Abington Has Alleged Damages

Abington states that Commerce's intentional interference with its contractual relations "has proximately resulted and/or will proximately result in damage to Abington, including the loss of income and other damages." (Abington's Countercl. ¶ 46.) Admittedly, Abington could have pled this particular count with greater specificity. Reading the Counterclaim as a whole, however, it is clear that Abington's fundamental allegation is that Commerce's interference has impaired its ability to recover the $2,400,000 loan it made to Equities and the rent payments from TD Bank. (Id. ¶¶ 25-46; Abington's Opp'n Mot. Dismiss Countercl. 9.) The Court finds

sufficient information here to satisfy Abington's burden of pleading damages.

In sum, the Court concludes that Abington has stated a plausible claim for intentional interference with contractual relations in accordance with Federal Rule of Civil Procedure 8 and the principles established by the Supreme Court in Twombly and Iqbal.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court finds that Third-Party Defendant Abington Savings Bank has stated claims for conversion and intentional interference with contractual relations. As such, Defendant/Third-Party Plaintiff Westminster Commerce, LLC's Motion to Dismiss Counterclaims of Abington Savings Bank is denied in its entirety.