IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WARMINSTER EQUITIES, LLC | : | |
|---|---|---|
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARMINSTER COMMERCE, LLC | : | NO. 10-520 |
| | : | |
| Defendant. | : | |

| WARMINSTER COMMERCE, LLC | : |
|---|---|
| Counterclaim/Third-Party Plaintiff, | : |
| v. | : |
| WARMINSTER EQUITIES, LLC | : |
| Counterclaim Defendant | : |
| and | : |
| ABINGTON SAVINGS BANK | : |
| Third-Party Defendant. | : |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                                              December 21, 2010

      Currently pending before the Court is Defendant Warminster Commerce, LLC's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Motion is granted with respect to all claims raised in Plaintiff's Complaint.

I.      **FACTUAL AND PROCEDURAL HISTORY**

This action involves a dispute over a commercial lease ("the Lease" or "the Leasehold") between Plaintiff Warminster Equities, LLC ("Plaintiff") and Defendant Warminster Commerce, LLC ("Defendant"). The Lease, which commenced in 1973, was originally between American Property Investors ("API"), the lessor, and Pennfood Associates ("Pennfood"), the lessee. (Def.'s Mot. Summ. J. at 3.) The Lease had an initial term of twenty-seven years, but provided the lessee with the option of exercising seven consecutive ten-year extensions. (Id.) The lessee could exercise these extensions "by giving the Lessor notice of such election to extend not later than twelve (12) months prior to the expiration of the basic term or the then current extended term." (Def.'s Mot. Summ. J., Ex. A, Lease Agreement between API and Pennfood ("Lease"), at COM-0045, ¶ 26.1.) The Lease stated that "[a]ll notices and other communications hereunder shall be in writing" and sent via first class mail. (Lease at COM-0033, ¶ 19.)

Pennfood properly exercised the option for the first ten-year extension on December 1, 1998, and assigned the Leasehold to Plaintiff on May 10, 2001. (Def.'s Mot. Summ. J. at 3-4.) Plaintiff financed its purchase of the Lease with a loan from Third-Party Defendant Abington Savings Bank ("Abington"), and subleased the property to Commerce Bank, the predecessor to TD Bank. (Pl.'s Mem. Opp'n at 6.) At present, TD Bank remains on the premises as subtenant. (Id.)

Defendant purchased the property from API on October 15, 2004. (Def.'s Mot. Summ. J. at 3.) On March 24, 2009, Defendant informed Plaintiff that it had not received written notice of Plaintiff's intent to extend the Lease for the second ten-year term, and that the Leasehold would therefore expire on December 31, 2009. (Def.'s Mot. Summ. J. at 4; Id. Ex. F.) On April 2,

2009, Plaintiff sent a letter to Defendant, which it claimed served as written notice of its intent to renew the Lease. (Compl. ¶ 14.) Plaintiff also claimed that it orally informed Defendant of its intent to renew prior to the December 31, 2008 option deadline, but Defendant maintained its position that the Lease had been terminated. (Id. ¶¶ 27-28.)

On December 17, 2009, Defendant sent a letter to Abington explaining that Plaintiff would no longer have an interest in the leased premises as of December 31, 2009, that the mortgage between Abington and Plaintiff would expire on that date, and that Abington should satisfy the mortgage immediately after January 1, 2010. (Abington's Countercl. ¶ 25.) That same day, Defendant also informed sublessee TD Bank that the Lease would expire at the end of 2009 and that it should thereafter send all rent payments directly to Defendant. (Id. ¶ 26.) In letters dated December 22, 2009, December 23, 2009, and December 29, 2009, Plaintiff informed Defendant, TD Bank, and Abington, respectively, of its position that it had properly exercised its option to extend the Lease. (Compl. ¶ 36.) TD Bank advised Plaintiff, on January 28, 2010, that it would place its future rent payments into an escrow account until the dispute between Plaintiff and Defendant was resolved. (Id. ¶ 39; Id. Ex. J.)

Plaintiff filed a Complaint in this Court on February 4, 2010, seeking a declaratory judgment that the Lease remains in full effect and requesting damages for Defendant's intentional interference with its contractual relationships with TD Bank and Abington. (Compl. ¶¶ 42-48.) On April 19, 2010, Defendant filed an Amended Answer to the Complaint, including affirmative defenses, a Counterclaim against Plaintiff, and a Third-Party Complaint against Abington. Defendant filed the present Motion for Summary Judgment on Plaintiff's claims on October 5, 2010, and Plaintiff filed its Memorandum in Opposition on October 26, 2010.

Defendant then filed a Reply on November 12, 2010, and Plaintiff filed a Sur-reply on November 16, 2010.

**II.    STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id. .

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving

4

party's case." Id. at 325.  Once the movant has carried its initial burden, the opposing party

"must do more than simply show that there is some metaphysical doubt as to material facts."

Matsushita Elec., 475 U.S. at 586.  "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson,

477 U.S. at 249.  Summary judgment may be granted when "the evidence is merely colorable . . .

or is not significantly probative."  Id. at 249-50 (citations omitted).

## III.    DISCUSSION

### A.    Whether Plaintiff Properly Exercised its Option to Extend the Lease

Under Pennsylvania law, "a lease is a contract and 'is to be interpreted according to

contract principles.'"  Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (quoting

Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986)).  In an option contract,

"'[t]ime is always of the essence.'"  W. Sav. Fund Soc'y of Philadelphia v. Se. Pa. Transp. Auth.,

427 A.2d 175, 178 (Pa. Super. Ct. 1981) (quoting New Eastwick Corp. v. Philadelphia Builders,

241 A.2d 766, 769 (Pa. 1968)).  Thus, when an option is not exercised until after the prescribed

deadline, and the only reason for the delay is the optionee's own negligence, "equity will not aid

the tardy optionee."  Finkle v. Gulf & W. Mfg. Co., 744 F.2d 1015, 1019-20 (3d Cir. 1984)

(citations omitted).  This is true even when the optionor suffers no prejudice as a result of the

delay.  Id. at 20 (citations omitted).

Here, the Lease provided the lessee with options to extend the original twenty-seven year

term for seven consecutive ten-year terms.  To exercise these options, the Lease required the

lessee to give the lessor written notice of its intent to renew at least twelve months prior to the

end of the current term.  In a letter dated December 1, 1998, Pennfood, the original lessee,

5

exercised the first option to extend the lease to December 31, 2009. (Def.'s Mot. Summ. J. at 3-4; Id. Ex. D.) Pennfood assigned the Lease to Plaintiff on May 10, 2001. All of the original terms and conditions of the Lease remained in full force and effect. This meant that if Plaintiff intended to extend the lease until December 31, 2019, it was required to provide Defendant, who bought the leased property from API in 2004, with written notice by December 31, 2008. Plaintiff failed to provide such written notice by the appropriate date, and Defendant notified Plaintiff in March of 2009 that the lease would terminate at the end of the year.

Plaintiff does not dispute the claim that it failed to comply with the technical terms of the Lease. (Pl.'s Mem. Opp'n at 12-13.) Rather, it seeks to be excused from the written notice requirement by arguing that: (1) the Lease was extended by the parties' conduct; (2) Defendant breached its duty of good faith and fair dealing in regards to the Lease; (3) Defendant waived the written notice requirement; (4) Defendant waived the requirement that notice be provided a year in advance; (5) Defendant modified the requirement that notice be in writing; and (6) Defendant failed to provide written notice of where notice of the Lease extension was to be sent. (Id. at 16-26.)[1] The Court considers each argument separately.

### 1. Whether the Lease was Extended by the Parties' Conduct

Plaintiff claims that Vernon Hill, one of Plaintiff's members, had multiple conversations

---

[1] Plaintiff also argues that the Statute of Frauds does not apply to the renewal of its Lease. (Id. at 26-27.) This argument is presumably a response to Defendant's contention that the Statute of Frauds was not satisfied in this case. Defendant's argument, however, was that the Statute of Frauds required a writing to *modify* the Lease, not to renew under the Lease's original terms. (Def.'s Mot. Summ. J. at 8-9.) Modification and the applicability of Pennsylvania's Statute of Frauds are discussed in section III.A.5, infra. Otherwise, the question of whether the Statute of Frauds required a writing to renew the Lease is irrelevant, because written notice was required by the Lease itself.

with Fred Colin, Defendant's manager, in which Mr. Hill advised Mr. Colin that Plaintiff intended to extend the Lease beyond December 31, 2009. (Id. at 16.) In his deposition, Mr. Hill testified that between 2004 and 2008, he and Mr. Colin had several discussions in which Plaintiff offered to purchase the leased property from Defendant. (Id., Ex. I, Dep. of Vernon Hill ("Hill Dep."), 81:11-82:25, 87:4-89:21, Sept. 30, 2010.) During these discussions, Mr. Hill stated that "I always referred to it as a 99-year lease, even though some time had lapsed. I said to him, Fred, you know, obviously we have the 99-year lease, we are going to be here forever . . . ." (Hill Dep. 87:19-22.) Plaintiff argues that "Mr. Hill's statements to Mr. Colin manifested such an intent on Plaintiff's behalf to exercise the extension – and those statements are supported by Plaintiff's having sublet a portion of land to TD Bank until at least 2021, and well past the January 1, 2010 commencement of the next extension term." (Pl.'s Mem. Opp'n at 17-18.)[2]

The problem with Plaintiff's argument, of course, is that the Lease unambiguously states that the options could only be exercised by written notice. Therefore, neither Mr. Hill's oral statements to Mr. Colin nor Plaintiff's act of subletting the property were sufficient to extend it. Plaintiff, however, relies on two cases for the proposition that "where a lessee gives oral notice to renew, and the lessor does not timely object to the form thereof, the lessor may be deemed to

---

[2] In making its argument that the Lease was extended by the parties' conduct, Plaintiff also states that Defendant:

> (a) attempted to convince Equities to buy Defendant's interest in the land at six times the price Defendant paid a few years before; (b) offered to purchase Equities' Improvements for less than the existing building was worth or even the value of even *one* year's rent from TD Bank under the sublease; (c) threatened TD Bank with eviction; and, (d) directed Abington Bank to discharge its mortgage.

Id. at 17. Even if all of these allegations are true, they are irrelevant to the question of whether the Lease was properly renewed.

have waived the right to written notice." (Id. at 16.) First, in McLelland v. Rush, 24 A. 354 (Pa. 1892), the Supreme Court of Pennsylvania found that, if the testimony of multiple witnesses was true,

> it not only proved that a full verbal notice of the intention to extend the time was given directly to the lessor, but also that it was accepted by her as such a notice; that no objection was made to its not being in writing; and, further, that she thereupon expressly agreed that the lessee might have the property for the full extended term of five years.

Id. at 355. In light of this evidence, the court held that "the case should have been submitted to the jury upon the question whether the plaintiff waived her right to a written notice of the extension of the term." Id. Here, on the other hand, there is no evidence that Mr. Colin "expressly agreed" that Mr. Hill's comments about a "99 year lease" were a sufficient substitute for the written notice requirement.[3]

The other case cited by Plaintiff, Matter of Opus One, Inc., 33 B.R. 190 (Bankr. W.D. Pa. 1983), is likewise inapplicable to the present matter. In Opus One, the lessee had notified the lessor "in unequivocal language of his intent [to extend the lease] upon four separate occasions," but the lessor failed to provide the lessee with information, such as rental figures under the renewed lease, prior to the option deadline. Id. at 191-92. The court held that enforcing the written notice requirement "would be manifestly unfair, particularly in light of [the lessor's] repeated refusal to supply information necessary for [the lessee's] exercise of its option." Id. at 194. In this case, however, there is no evidence that Defendant was responsible in any way for Plaintiff's failure to provide written notice. Plaintiff argues that Mr. Colin "embarked on [a]

---

[3] Indeed, it is not even clear that Mr. Hill's reference to the potentially long duration of the Lease could be considered adequate oral notice, since the purpose of his conversations with Mr. Colin was not to exercise the options, but to convince Defendant to sell the property to Plaintiff.

8

scheme to lull Mr. Hill of Equities into *not* giving *written* notice of its intention to extend . . . the lease, so that Defendant could gain a windfall from the forfeiture by Equities of its valuable leasehold interest." (Pl.'s Mem. Opp'n at 17.) The only evidence of this alleged scheme appears to be the fact that, prior to the option deadline, Mr. Colin failed to remind Plaintiff of the written notice requirement. (Id. at 10-11.) The Lease, however, did not place any obligation upon the lessor to provide such a reminder, and so Plaintiff's failure to comply with the technical terms of the Lease cannot be attributed to any fault of Defendant.[4]

Finally, Plaintiff argues that its act of subletting the property beyond its current lease term is additional evidence of its intent to exercise the options to extend. (Id. at 18.) Pennsylvania law states that "acceptance of an option to extend a lease 'may be indicated by any act, expression or course of conduct, without formal notice to the lessor, *unless required by the terms of the contract*.'" Wilmington Trust Co. v. County of Allegheny, 640 F. Supp. 2d 643, 654 (W.D. Pa. 2009) (quoting White v. Long, 137 A. 673, 676 (Pa. 1927)) (emphasis added). Because the Lease required formal, written notice, renewal could not be effected by Plaintiff's conduct, including its act of subletting the property.

### 2. Whether Defendant Breached its Duty of Good Faith and Fair Dealing

Pennsylvania law recognizes "an implied duty of good faith and fair dealing in the performance of a contract." Quinn Constr., Inc. v. Skanska USA Bldg., Inc., No. CIV.A.07-406,

---

[4] Similarly, Plaintiff cites to Land v. Cloister Pure-Spring Water Co., 3 Pa. D. & C.3d 126 (1975), for the proposition that "where a lessee orally indicates its intent to renew a lease in time, equity may prevent a landlord from rejecting a late written notice where a landlord has not been prejudiced and bears some responsibility for the lateness of the written notice." (Pl.'s Mem. Opp'n at 16.) Because Defendant did nothing to cause Plaintiff's delay in providing written notice in this case, the Court finds that this argument lacks merit.

2010 WL 3064347, at *7 (E.D. Pa. Aug. 3, 2010) (citing Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 153 (Pa. Super. Ct. 1989)). The duty of good faith requires "'honesty in fact in the conduct or transaction concerned.'" Graboff v. The Collern Firm, No. CIV.A.10-1710, 2010 WL 4456923, at *4 (E.D. Pa. Nov. 8, 2010) (quoting S & C Rest. Corp. v. Sofia's Diner Rest., Inc., No. CIV.A.98-5972, 1999 WL 627914, at *6 (E.D. Pa. Aug. 18, 1999)). In Pennsylvania, "the duty of good faith has only been enforced in limited situations." Quinn Constr., 2010 WL 3064347, at *7. As such, "Pennsylvania courts would not impose a duty of good faith independent of any contractual term where . . . two sophisticated business entities have engaged in an arms-length transaction." Id. (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).

As evidence of bad faith in this case, Plaintiff points to the fact that Defendant failed to remind it of the written notice requirement, waited almost three months after the December 31, 2008 option deadline before alerting Plaintiff that the lease had lapsed, and made an offer of $100,000 for the improvements Plaintiff made on the property, which Plaintiff considers to be significantly less than market value. (Pl.'s Mem. Opp'n at 19-21.) As previously discussed, however, Defendant did not have any duty to remind Plaintiff that the option deadline was approaching. Furthermore, there is no evidence that the reason Plaintiff failed to give proper written notice was because it believed Defendant – through its words or actions – had waived this requirement. To the contrary, Mr. Hill testified that when he learned that the Lease had lapsed, he contacted his attorney "to see if when we went to closing he exercised all the options or at least 20 years of the options like I assumed he had." (Hill Dep. at 10:17-22.) His attorney had not done so. (Id. at 11:4-9.) Thus, Plaintiff's failure to properly exercise the options was not due

10

to its reliance on any bad faith conduct on the part of Defendant. Rather, it was based upon a false assumption about what its own representative had done.

As for Plaintiff's argument that Defendant acted in bad faith by waiting three months to inform Plaintiff that the Lease had lapsed, not only is there no evidence of any malicious motive for the delay, but Plaintiff was not deprived of any rights or privileges under the Lease as a result. As noted above, time is always of the essence in an option contract. W. Sav. Fund Soc'y, 427 A.2d at 178. Therefore, even if Defendant notified Plaintiff immediately after the option deadline had passed, Plaintiff would still be unable to renew the Lease.

Finally, the Lease states that at the conclusion of the tenancy, the lessee has the option to sell – and the lessor is obligated to purchase – the improvements that the lessee made upon the premises. (Lease at COM-0038, ¶ 22(c)(iii).) If the lessor and the lessee cannot agree on a price for the improvements, "the fair market value shall be determined by majority vote of three members of the American Institute of Real Estate Appraisers, one of whom shall be designated by Lessor and the other by Lessee, and the third by the first two appraisers." (Id. at COM-0039, ¶ 22(d).) Because the value of the improvements has not yet been determined by these neutral third parties, the Court cannot find Defendant acted in bad faith by offering $100,000 for them.

### 3. Whether Defendant Waived the Written Notice Requirement

In Pennsylvania, waiver of a legal right requires "'a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.'" TD Banknorth, N.A. v. Summers, No. CIV.A.07-4810, 2009 WL 484210 at *4 (E.D. Pa. Feb. 25, 2009) (quoting Brown v. Pittsburgh, 186 A.2d 399, 401 (Pa. 1962)). Waiver may be express or implied. Brown, 186 A.2d at 401. Implied waiver "'applies only to situations involving circumstances equivalent

to an estoppel, and the person claiming the waiver to prevail must show that he was misled and prejudiced thereby.'" 2101 Allegheny Assoc. v. Cox Home Video, Inc., No. CIV.A.91-2743, 1991 WL 225008, at *9 (E.D. Pa. Oct. 29, 1991) (quoting Consol. Rail Corp. v. Delaware & H.R. Co., 569 F. Supp. 26, 29-30 (E.D. Pa. 1983)).

Plaintiff points to the conversations between Mr. Hill and Mr. Colin, during which Mr. Hill communicated Plaintiff's interest in buying the property, as evidence that Defendant waived its contractual right to written notice of Plaintiff's intent to extend the Lease. (Pl.'s Mem. Opp'n at 22-23.) Mr. Hill testified that, on one occasion, he told Mr. Colin "that I'm there forever, and I want to buy it. And he said, you know, I understand, call me . . . ." (Hill Dep. at 131:4-6.) This evidence is insufficient to establish waiver. First, this conversation occurred in the context of Plaintiff's attempt to purchase the property, not to exercise the options to extend. However, even assuming Mr. Colin inferred from Mr. Hill's reference to the potentially long duration of the Lease that Plaintiff intended to renew, he did not respond with any "clear, unequivocal and decisive act" to indicate that this notice was sufficient, and that Defendant would surrender its right to written notice.

Furthermore, Plaintiff has not demonstrated that it was misled by Defendant, as is required for a claim of implied waiver. Plaintiff's failure to give written notice was not due to its belief that Defendant had waived this requirement. Rather, as Mr. Hill testified, it was the result of Plaintiff's false assumption that its attorney had exercised the options when the Leasehold was purchased in 2001. In sum, there is no evidence that Defendant expressly or implicitly waived the written notice requirement.

### 4. Whether Defendant Waived the Requirement that Written Notice be Provided One Year in Advance

Plaintiff argues that because Defendant did not suffer any prejudice as a result of receiving written notice three months after the option deadline, and because Plaintiff gave Mr. Colin "oral expressions" of its intent to renew, Defendant "waived strict compliance with the time for written notice." (Pl.'s Mem. Opp'n at 24.)[5] First of all, whether Defendant was prejudiced by receiving late notice is irrelevant to the question of waiver. Second, as previously discussed, even if Mr. Hill gave Mr. Colin oral notice of Plaintiff's intent to extend the Lease, there is no evidence that Mr. Colin waived the written notice requirement. The Court therefore finds that Defendant did not waive the requirement that notice be received one year prior to the Lease's expiration.

### 5. Whether Defendant Modified the Requirement that Notice of Renewal be in Writing

Pursuant to the Pennsylvania Statute of Frauds, any lease longer than three years must be in writing. 68 PA. CONS. STAT. § 250.202. When the Statute of Frauds requires a contract to be in writing, "its terms cannot be subsequently orally modified." Cox Home Video, Inc., 1991 WL 225008, at *6 (citations omitted).

Here, Plaintiff argues that the Lease was orally modified during the conversations between Mr. Hill and Mr. Colin. (Pl.'s Mem. Opp'n 25.) The Lease at issue, however, is for a term longer than three years, and so the Statute of Frauds applies. Therefore, even if the

---

[5] Plaintiff relies on Land, 3 Pa. D. & C.3d at 134, for the proposition that "substantial compliance relating to the time of performance is all that is required" when time is not of the essence. (Pl.'s Mem. Opp'n at 23.) As discussed above, the Pennsylvania Supreme Court has held that time is always of the essence in an option contract. See W. Sav. Fund Soc'y, 427 A.2d at 178.

conversations between Mr. Colin and Mr. Hill demonstrated an intent to modify the written notice requirement – which they do not – Plaintiff's claim that the Lease was orally modified is barred by the Statute of Frauds.[6]

### 6. Whether Defendant Failed to Provide Written Notice of Where Notice of the Lease Extension was to be Sent

The Lease states that "Lessor shall have the right, from time to time, to change the designation . . . of a person to receive payments, notices and other communications hereunder or the address of such person, upon giving 15 days' notice thereof to Lessee." (Lease at COM-0034, ¶ 19.) When Defendant purchased the premises from API in 2004, API sent written notice to Plaintiff instructing it to send all future rental payments and correspondence to Defendant. (Pl.'s Mem. Opp'n, Ex. L.) The notice included Defendant's address. (Id.) Despite its admission that it received written notice from its landlord of where to send rent and other correspondence, Plaintiff argues that Defendant failed to comply with the terms of the Lease because *Defendant itself* never sent such notice.[7] (Pl.'s Mem. Opp'n at 26.) This argument is entirely without merit. The Lease gave the lessor the right to change its address, provided it gave the lessee written notice. On October 15, 2004, API, still acting in its capacity as lessor, sent

---

[6] There is an exception to the Statute of Frauds when "time is not of the essence of the contract but is only a detail of the agreement." Cox Home Video, Inc., 1991 WL 225008, at *6 (citations omitted). Because time is always of the essence in an option contract, the exception does not apply to this case.

[7] Defendant has submitted two letters that show it did in fact provide Plaintiff with written notice of where to send rent payments and correspondence. (Def.'s Reply, Exs. D & E). Plaintiff argues that these letters should be excluded from the record because Defendant failed to provide them to Plaintiff during discovery. (Pl.'s Sur-reply at 6.) Even if the Court excludes these letters, it does not change the fact that Plaintiff received adequate notice of Defendant's contact information from the previous landlord.

14

such notice to Plaintiff.

In conclusion, Plaintiff's failure to properly extend the Leasehold was due to its own negligence; it was not the result of any misconduct by Defendant. The Court therefore finds that Plaintiff did not exercise the options in accordance with the Lease's requirements, and grants summary judgment to Defendant on this issue.

> **B.  Whether Defendant Intentionally Interfered with Plaintiff's Existing and Prospective Contractual Relationships**

In Pennsylvania, which follows the Restatement (Second) of Torts, a claim for intentional interference with existing contractual relations is defined as follows:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss to the other from the third person's failure to perform the contract."

Binns v. Flaster Greenberg, P.C., 480 F. Supp. 2d 773, 778 (E.D. Pa. 2007) (quoting Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978)). In order to prevail on a claim for interference with contractual relations, the plaintiff must demonstrate the following: "(1) a contractual relation; (2) purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damage resulting from defendant's conduct." Gundlach v. Reinstein, 924 F. Supp. 684, 693 (E.D. Pa. 1996) (citing Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1047 (E.D. Pa. 1994)). A claim for interference with prospective contract also requires intent to harm the plaintiff, the absence of privilege or justification, and damages. Acumed LLC v. Advanced Surgical Serv., Inc., 561 F.3d 199, 212 (3d Cir. 2009). Because this claim arises prior to the formation of a contractual relationship, however, the plaintiff must also

demonstrate "a reasonable likelihood that the relationship would have occurred but for the defendant's interference." Id.

In this case, Plaintiff claims that Defendant intentionally interfered with its contractual relationships by notifying TD Bank and Abington that Plaintiff's leasehold would expire on December 31, 2009. (Compl. ¶¶ 34-35; ¶¶ 44-48.) Defendant instructed TD Bank to send to it all future rent payments, and requested Abington to satisfy its mortgage. (Id. ¶¶ 34-35.) As a result, TD Bank placed its rent payments into escrow and Abington signed a forbearance agreement with Plaintiff. (Pl.'s Mem. Opp'n at 28-29.)

Even viewing these facts in a light most favorable to Plaintiff, there is no evidence that Defendant acted without privilege or justification, which is an essential element of an intentional interference claim. Defendant's communications were neither improper nor dishonest. Rather, they merely informed TD Bank and Abington that Plaintiff had not exercised its renewal option – which this Court finds to be an accurate statement – and that Defendant was the successor in interest to Plaintiff's Leasehold.

Plaintiff also alleges that by asserting that the Lease had lapsed, Defendant interrupted its negotiations to sublease a portion of the property to Advance Auto. (Pl.'s Mem. Opp'n at 29.) Plaintiff contends that this establishes a claim for intentional interference with prospective contractual relationships. (Id.) Defendant argues that the Court should disregard this claim because it was not included in Plaintiff's Complaint. (Def.'s Reply at 12-13.) The Court finds that even if Plaintiff had properly pleaded its claim for intentional interference with prospective contractual relationships, it would still fail because Defendant was justified in ending the Lease upon Plaintiff's failure to provide timely written notice. The Court therefore grants summary

16

judgment to Defendant on Plaintiff's claim for intentional interference with contractual relationships and prospective contractual relationships.

**IV.     CONCLUSION**

For all of the foregoing reasons, the Court finds that Plaintiff has not presented sufficient evidence for a reasonable jury to return a verdict in its favor.  Plaintiff is a sophisticated business entity which acquired the Lease in May of 2001.  It had over seven years to provide written notice of its intent to renew before the December 31, 2008 deadline, but failed to do so because it mistakenly assumed that its attorney exercised the options when it purchased the Lease.  Because this failure was due to Plaintiff's own negligence, rather than any improper conduct by Defendant, equitable relief is unavailable.  Defendant's Motion for Summary Judgment is granted with respect to all claims raised in Plaintiff's Complaint.

An appropriate order follows.