IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARMINSTER EQUITIES, LLC, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARMINSTER COMMERCE, LLC, | : | NO. 10-520 |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

| | |
|---|---|
| WARMINSTER COMMERCE, LLC, | : |
| | : |
| Counterclaim/Third-Party Plaintiff, | : |
| | : |
| v. | : |
| | : |
| WARMINSTER EQUITIES, LLC, | : |
| | : |
| Counterclaim Defendant, | : |
| | : |
| and | : |
| | : |
| ABINGTON SAVINGS BANK, | : |
| | : |
| Third-Party Defendant. | : |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                              August 4, 2011

Currently pending before the Court are the following: (1) Plaintiff Warminster Equities, LLC's ("Plaintiff") Motion for Partial Summary Judgment on Defendant's Counterclaim; (2) Defendant Warminster Commerce LLC's ("Defendant") Motion for Summary Judgment on its Counterclaim; (3) Defendant's Motion for Summary Judgment on Third Party Defendant Abington Savings Bank's ("Abington") Counterclaim; and (4) Abington's Motion for Summary

Judgment on its Counterclaim and Count I of Defendant's Counterclaim. For the following reasons, the Motions are granted in part and denied in part as set forth in the accompanying Order.

## I. FACTUAL HISTORY

This action stems from a dispute over a commercial lease ("the Lease" or "the Ground Lease") between Plaintiff and Defendant. The Lease, which commenced in 1973, was originally between American Property Investors ("API"), the lessor, and Pennfood Associates ("Pennfood"), the lessee. (Def.'s Mot. Summ. J. Countercl. 2.) The Lease had an initial term of twenty-seven years, but provided the lessee with the option of exercising seven consecutive ten-year extensions. (Id.) The Lease stated that "[a]ll notices and other communications hereunder shall be in writing" and sent via first class mail. (Id., Ex. A, Lease Agreement between API and Pennfood ("Ground Lease"), at COM-0033, ¶ 19.)

Pennfood properly exercised the option for the first ten-year extension on December 1, 1998, and assigned the Ground Lease to Plaintiff in 2001. (Def.'s Mot. Summ. J. Countercl. 2.) Plaintiff financed its purchase of the Lease with a mortgage from Abington and subleased the property to Commerce Bank, the predecessor to TD Bank. (Pl.'s Mot. Partial Summ. J. 4-5.) At present, TD Bank remains on the premises as subtenant. (Id. at 6.)

Defendant purchased the property from API and became Plaintiff's landlord in 2004. (Def.'s Mot. Summ. J. Countercl. 2.) In the spring of 2009, Defendant informed Plaintiff that it had not received written notice of Plaintiff's intent to extend the Lease for the second ten-year term, and that the Leasehold would therefore expire on December 31, 2009. (Compl. ¶ 28.) On April 2, 2009, Plaintiff sent a letter to Defendant, which allegedly served as written notice of

Plaintiff's intent to renew the Lease. (Id. ¶ 14.) Plaintiff also claimed that it orally informed Defendant of its intent to renew prior to the December 31, 2008 option deadline, but Defendant maintained its position that the Lease had been terminated. (Id. ¶¶ 27-28.)

On December 17, 2009, Defendant sent a letter to Abington explaining that Plaintiff would no longer have an interest in the leased premises as of December 31, 2009, that the mortgage between Abington and Plaintiff would expire on that date, and that Abington should satisfy the mortgage immediately after January 1, 2010. (Abington's Countercl. ¶ 25.) That same day, Defendant also informed sublessee TD Bank that the Lease would expire at the end of 2009 and that it should thereafter send all rent payments directly to Defendant. (Id. ¶ 26.) In letters dated December 22, 2009, December 23, 2009, and December 29, 2009, Plaintiff informed Defendant, TD Bank, and Abington, respectively, of its position that it had properly exercised its option to extend the Lease. (Compl. ¶ 36.) TD Bank advised Plaintiff, on January 28, 2010, that it would place its future rent payments into an escrow account until the dispute between Plaintiff and Defendant was resolved. (Id. ¶ 39; id. Ex. J.)

The Ground Lease also provides that, upon the termination of the Lease, the lessee may elect to sell to the lessor any improvements made upon the property. (Ground Lease at COM-0038, ¶ 22(c)(iii).) In addition to the dispute over whether the Ground Lease was properly renewed, Plaintiff and Defendant also disagree over what, if any, compensation Plaintiff is entitled to for the bank building and other improvements that were made on the leased premises. (Def.'s Am. Countercl. ¶¶ 20-21.)

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint in this Court on February 4, 2010, seeking a declaratory

judgment that the Lease remains in full effect and requesting damages for Defendant's intentional interference with its contractual relationships with TD Bank and Abington. (Compl. ¶¶ 42-48.) On April 19, 2010, Defendant filed an Amended Answer to the Complaint, including affirmative defenses, a Counterclaim against Plaintiff, and a Third-Party Complaint against Abington. In its Counterclaim, Defendant seeks the following: (i) a declaration that the Ground Lease expired on December 31, 2009 and that Abington's leasehold mortgage shall be marked satisfied or released; (ii) the ejectment of Plaintiff from its property; (iii) a declaration that Plaintiff has no right to any rent or other amounts due from TD Bank; (iv) in the alternative to Count III, holdover rent from Plaintiff for the period between January 1, 2010 and the date Plaintiff vacates the property; and (v) "a declaration that the sole improvement located on the Property whose fair market value is to be determined pursuant to the Land Lease" is Plaintiff's "reversionary interest" in the bank building. (Def.'s Am. Countercl. ¶¶ 27-57.)

Abington filed its Answer and Counterclaim against Defendant on June 14, 2010. In Count I of its Counterclaim, Abington requests a declaration that "(a) the Land Lease has not expired; (b) Abington continues to hold a leasehold mortgage interest; or, alternatively, if the Court determines that the Land Lease has expired, (c) that Abington maintains an interest in the Improvements and the rents from the Improvements," which takes priority over Defendant's interest. (Abington's Countercl. ¶ 38.) Count II is a claim for conversion of collateral, and Count III is a claim for intentional interference with contractual relations. (Id. ¶¶ 39-46.)

On October 5, 2010, Defendant filed a Motion for Summary Judgment on Plaintiff's claims, which this Court granted on December 21, 2010.[1] Neither Defendant nor Abington's

---

[1] Plaintiff's Motion for Reconsideration of this decision was denied on January 26, 2011.

Counterclaims were addressed in Defendant's initial Motion for Summary Judgment. On June 2, 2011, Plaintiff filed a Motion for Partial Summary Judgment on Defendant's Counterclaim, Defendant filed separate Motions for Summary Judgment on its own Counterclaim and on Abington's Counterclaim, and Abington filed a Motion for Summary Judgment on its Counterclaim and Count I of Defendant's Counterclaim. Responses in Opposition to Defendant's Motions for Summary Judgment were filed by Plaintiff and Abington on June 23, 2011. The following day, Defendant filed separate Responses in Opposition to Plaintiff and Abington's Motions for Summary Judgment. Finally, on July 11, 2011, Defendant filed two Reply Briefs in support of its Motions for Summary Judgment.

### III.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v.

Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Summary judgment may be granted when "the evidence is merely colorable . . . or is not significantly probative." Id. at 249-50 (citations omitted).

## IV. DISCUSSION

The Court considers Defendant and Abington's Counterclaims separately. Count V of Defendant's Counterclaim, which concerns the nature of Plaintiff's interest in the buildings and other improvements constructed on the leased premises ("the Improvements"), has a significant bearing on the Court's decision regarding the other four counts of the Counterclaim. As such, Count V is addressed first.

### A. Defendant's Counterclaim

#### 1. Count V

Paragraph 22(c) of the Ground Lease states as follows:

6

> Notwithstanding anything to the contrary elsewhere contained in this Lease, only at the expiration of the of the term hereof . . . Lessee may exercise any of the following options in connection with the Improvements:
> (i) To remove the Improvements from the Leased Premises; or
> (ii) abandon the Improvements; or
> (iii) to sell the Improvements to the Lessor at the then fair market value thereof. In the event Lessee exercises the option under this subdivision (iii), Lessor agrees to purchase the Improvements in accordance with the procedure set forth in sub-paragraph (d) of this paragraph.

(Ground Lease at COM-0038, ¶ 22(c).) Plaintiff has elected to sell the Improvements to Defendant, but the two parties disagree over what buildings constitute "Improvements" as well as how they should be valued. In Count V of its Counterclaim, Defendant seeks a declaration that the sole Improvement located on its property for which Plaintiff is entitled to receive compensation is the building currently occupied by TD Bank, and that Plaintiff's potential recovery is limited to a "reversionary interest" in the bank building. (Def.'s Am. Countercl. ¶¶ 49-57.)

In its Motion for Summary Judgment, however, Defendant now argues that Plaintiff is not entitled to *any* compensation because the bank building does not qualify as an "Improvement" as defined by the Ground Lease. (Def.'s Mot. Summ. J. Countercl. 9-11.) The Lease states that API, Defendant's predecessor-in-interest, purchased the premises at issue exclusive of the Improvements, which are defined as "the buildings and improvements situated thereon." (Id. at 4 (citing Ground Lease at COM-0004).) According to Defendant, the phrase "situated thereon" refers only to those buildings and improvements that were located on the premises at the time the Lease commenced in 1973. (Id. at 4.) Consequently, because the bank building and any other additions Plaintiff may have made were constructed after the Lease began, Defendant argues that they are not Improvements for which Plaintiff is entitled to payment. (Id.)

7

Plaintiff has also moved for summary judgment on Count V of Defendant's Counterclaim, (Pl.'s Mot. Partial Summ. J. 7, 11), and argues that the term "Improvements" refers to *all* buildings and improvements, not merely those that existed in 1973.  (Pl.'s Resp. Opp'n 12-17.)  In support of this argument, Plaintiff points to the fact that when it bought the Ground Lease from Pennfood Associates, the purchase agreement stated that Pennfood was "'the owner of the buildings and other improvements located on the Land, including all fixtures, electrical, heating, air conditioning, plumbing, security, fire suppression and other mechanical systems (the "Improvements")' and agreed to 'sell the Improvements and to assign all of [its] right, title and interest in and to the Lease . . . .'"  (Id. at 14-15 (quoting id. Ex. B at WEQ 580).)  In contrast, the Special Warranty Deed conveying to Defendant the property at issue specifically *excluded* "'the buildings and improvements, fixtures and structures situated on the Land to the extent owned by the tenants of the Land (the "Improvements"), as well as all personal property of the tenants located upon the Land or Improvements . . . .'"  (Id. at 14 n.12 (quoting id. Ex. D at COM-185).)  In addition, Plaintiff paid $2.2 million for the Ground Lease, while Defendant only paid approximately $364,000 for the land itself.  (Id. at 4.)

The Court agrees with Plaintiff and finds that the term "Improvements" applies to all buildings and improvements that were constructed on the property.  As noted above, the Ground Lease defines "Improvements" as "all buildings and improvements situated thereon [i.e. the leased premises]."  It does not say "situated thereon" as of a particular date.  Defendant argues that a separate paragraph in the Lease – which grants Plaintiff the right to construct "additions or other improvements to the Improvements" – shows that the original parties to the Lease intended to distinguish between the Improvements, which existed at the time the Lease commenced, and

8

other improvements that were made subsequently. (Def.'s Mot. Summ. J. Countercl. 4 (citing Ground Lease at COM-0018, ¶ 11).)[2] The Court is unpersuaded. This provision merely describes the conditions under which additional improvements may be made; it does not exclude subsequent buildings or alterations from the category of "Improvements" for which Plaintiff is entitled to compensation.

The Court now turns to Defendant's original argument with respect to Count V of its Counterclaim, which asserts that Plaintiff's compensation for the sale of the Improvements is limited to its "reversionary interest" in the bank building. According to Defendant, the bank building was constructed by TD Bank – the sublessee – at its sole cost and expense. (Def.'s Am. Countercl. ¶¶ 49-57.) As such, TD Bank is the owner of the bank building and Plaintiff has only a residual interest, if any, in that building. (Id.)[3]

There are several problems with this argument. First, Defendant has not introduced definitive evidence that TD Bank is the owner of the bank building pursuant to the terms of the sublease between Plaintiff and TD Bank. Rather, Defendant has simply pointed to provisions in

---

[2] The provision governing "Alterations and Additions" states as follows:

> If not at the time in default under this Lease, Lessee at its expense may make alterations of and additions or other improvements to the Improvements or any part thereof, provided that any alterations or additions or other improvements (i) shall not reduce the fair market value of the Leased Premises and Improvements below their value immediately before such alteration or addition, or impair the usefulness of the Leased Premises and the Improvements, (ii) are effected with due diligence, in a good and workmanlike manner and in compliance with all Legal Requirements and Insurance Requirements, and (iii) are promptly and fully paid for by Lessee.

(Ground Lease at COM-0018, ¶ 11.)

[3] Defendant does not describe the value of the alleged reversionary interest, but Plaintiff states that Defendant initially offered $100,000 for the Improvements. (See Compl. ¶ 33.)

the sublease that require TD Bank to construct the building at its sole expense, (Def.'s Mot. Summ. J. Countercl. 3 (citing id. Ex. B ¶¶ 3.1, 16.1)), and to pay all real estate taxes, maintain the premises, and obtain the proper approval and permits to erect the bank building. (Id. at 11 n.18 (citing id. Ex. B ¶¶ 5.1, 7.1.9, 12.1-.2).) The fact that TD Bank was required to construct the building and pay associated costs does not dispositively establish ownership. Indeed, Plaintiff argues that while TD Bank paid for and constructed the building, it received a reduced rent to reflect that expense. (Pl.'s Resp. Opp'n 4.) In sum, whether or not TD Bank is the owner of the bank building is an issue that cannot be resolved based upon the evidence before the Court.

Second, "[a] covenant generally by the lessor to compensate the lessee for improvements erected by him or her has been held to include improvements erected by a sublessee." 52A C.J.S. *Landlord & Tenant* § 873 (citing William H. Low Estate Co. v. Lederer Realty Corp., 98 A. 180, 182 (R.I. 1916)). Here, the Ground Lease provides that upon the end of Plaintiff's tenancy, Plaintiff has the right to remove, abandon, or sell the Improvements to Defendant, which include any and all buildings constructed upon the leased premises. The Lease does not include any limiting or qualifying language in this paragraph, and so it does not matter whether the Improvements were made by Plaintiff, its predecessor-in-interest, or its subtenant. Therefore, even if TD Bank constructed and paid for the bank building, Plaintiff is entitled to the value of the building pursuant to the terms of the Ground Lease.[4] Accordingly, Plaintiff's Motion for Summary Judgment on Count V of Defendant's Counterclaim is granted, and Defendant's Motion for Summary Judgment is denied.

---

[4] If the sublease between TD Bank and Plaintiff entitles TD Bank to the value of the bank building, TD Bank can pursue that claim against Plaintiff in a separate litigation.

**2.     Count II**

Defendant moves for summary judgment on Count II of its Counterclaim, which seeks ejectment of Plaintiff from its property – including the Improvements – now that the Ground Lease has expired.  (Def.'s Mot. Summ. J. Countercl. 7-8.)  Plaintiff has filed its own Motion for Summary Judgment on this claim, arguing that in order to sustain an action for ejectment, Defendant must show "(1) ownership and right to immediate possession; and (2) wrongful possession by the adverse party."  (Pl.'s Mot. Partial Summ. J. 8 (citing Lachner v. Swanson, 67 Pa. D. & C.2d 303, 305 (1975)).)  Because Defendant has not yet purchased the Improvements, Plaintiff argues that it "continues to own the Improvements and its possession is not wrongful."  (Id. at 8.)

While Plaintiff correctly states the law pertaining to ejectment, this is a more nuanced case than one in which a party unambiguously "owns" the property free of any restrictions.  Here, Plaintiff owns the Improvements and may keep them on Defendant's property for the duration of the Ground Lease.  Upon expiration of the Lease, however, Plaintiff must either remove the Improvements, abandon them, or sell them to Defendant.  As discussed above, Plaintiff has elected to sell the Improvements, but such sale has not yet occurred.  Therefore, the pertinent question is whether Plaintiff may remain in possession of the Improvements after the expiration of the Lease but prior to the sale.

This precise issue does not appear to have been addressed by Pennsylvania courts or the Third Circuit, but other jurisdictions have held that

> [w]hether or not the lessee must surrender possession of the premises before being paid for the improvements depends on the language of the lease, and . . . in the absence of reservation in the lease of the right to retain possession of the leased premises as security

11

for the performance of the lessor's covenant to pay for improvements, the lessee has no right to retain possession of the premises after the expiration of the lease, and that his or her remedy is by action on the lease.

52A C.J.S. *Landlord & Tenant* § 877 (2011) (footnotes omitted) (citing cases from other jurisdictions). A tenant's right to retain possession "may be implied from a provision that the lessee shall surrender possession on being paid for his or her improvements, or that the lessor shall renew the lease or pay for the improvements, or that the lessee may set off against the rent the value of improvements made by him or her." Id. (footnotes omitted). In this case, the Court is unable to find any language in the Ground Lease indicating that payment by Defendant is a condition precedent to Plaintiff's surrender of possession of the Improvements. Rather, the Lease simply sets forth the manner in which Defendant must make an offer for the Improvements, provides Plaintiff with the right to dispute that offer, and establishes an appraisal process in the event that the two parties cannot agree on the fair market value.[5]

---

[5] The provision in the Ground Lease governing the procedure for Defendant's purchase of the Improvements states as follows:

> In the event Lessee elects to have Lessor purchase the Improvements . . . then at least thirty (30) days prior to the expiration of the term hereof Lessor shall give Lessee written notice of Lessor's reasonable estimate of the fair market value of the Improvements and unless such estimate is disputed by Lessee, and Lessee gives notice of such dispute to Lessor within (30) days after the date that Lessee receives the notice from Lessor, the value set forth in Lessor's notice shall be binding upon both Lessor and Lessee. In the event Lessor and Lessee shall not agree on the fair market value of the Improvements within ten (10) days after the date that Lessor has received the notice from Lessee as to such dispute, the fair market value shall be determined by majority vote of three members of the American Institute of Real Estate Appraisers, one of whom shall be designated by Lessor and the other by Lessee, and the third by the first two appraisers. . . . All costs and expenses of such appraisal shall be borne by Lessee if the fair market value, determined by the appraisers, does not exceed by more than five percent (5%) the amount determined by Lessor and set forth in Lessor's above-mentioned notice of estimated value. Otherwise, Lessor and Lessee shall each pay the fees of the appraiser designated by each of them and shall equally share all other costs and expenses of such appraisal. The

If Plaintiff was permitted to remain in possession of the Improvements while the parties negotiated a sale price, it would be tantamount to an indefinite extension of Plaintiff's tenancy. Clearly, the Lease did not intend for this result. Plaintiff's contractual right to sell the Improvements to Defendant did not even come into effect until the Lease was set to expire,[6] and there is nothing in the Lease to indicate either: (i) the termination of the Lease is contingent upon the sale of the Improvements; or (ii) Plaintiff may remain in possession of the Improvements until the sale occurs. Because the Ground Lease does not provide Plaintiff with the right to retain possession of the Improvements after the Lease has expired, Defendant's Motion for Summary Judgment on Count II of its Counterclaim is granted, and Plaintiff's Motion for Summary Judgment is denied.

**3. Counts III and IV**

Both Defendant and Plaintiff also move for summary judgment on Counts III and IV of Defendant's Counterclaim. (Def.'s Mot. Summ. J. Countercl. 8-9; Pl.'s Mot. Partial Summ. J. 11, 13.) Count III is a request for a declaration that Plaintiff no longer has any right to rent from subtenant TD Bank, and Count IV – pleaded in the alternative to Count III – is a claim for holdover rent from the time the Ground Lease expired to the time Plaintiff vacates the premises.

---

> closing shall take place (i) on the date of the expiration of the term hereof, if there is no dispute as to the fair market value of the Improvements; or (ii) if there is a dispute as to the fair market value of the Improvements, thirty (30) days after such dispute shall have been resolved, either by agreement of the parties or after determination of the fair market value has been made by the appraisal procedure above set forth.

(Ground Lease at COM-0038-40, ¶ 22(d).)

[6] (See Ground Lease at COM-0038, ¶ 22(c) ("[O]nly at the expiration of the term hereof . . . Lessee may exercise any of the following options in connection with the Improvements.").)

(Def.'s Am. Countercl. ¶¶ 40-48.)  Because the Court finds that the Ground Lease expired on December 31, 2009 and Plaintiff cannot retain possession of the Improvements pending their sale, Defendant's Motion for Summary Judgment on Count III is granted, and Plaintiff's Motion for Summary Judgment is denied.  Because the Court is granting Defendant's Motion on Count III, both Defendant and Plaintiff's Motions for Summary Judgment on Count IV are denied as moot.

    4.   **Count I**

In Pennsylvania, a mortgage is satisfied "when all sums due and owing are tendered to the mortgagee."  O'Donoghue v. Laurel Sav. Ass'n, 728 A.2d 914, 916-17 (Pa. 1999).  A mortgage is "marked" as satisfied "when the mortgagee physically notes in the margin of the official mortgage papers, or by a satisfaction piece, that the mortgage has been paid in full. . . .  Once the mortgage is marked satisfied, all interested parties are on notice that the obligation of the loan has been fulfilled."  Id. at 917 (citing 21 PA. CONS. STAT. § 681).

Defendant moves for summary judgment on Count I of its Counterclaim, which seeks a declaration that the Ground Lease expired on December 31, 2009, and that Abington's leasehold mortgage shall be marked as satisfied or released.  (Def.'s Mot. Summ. J. Countercl. 6-7.) Plaintiff and Abington have moved for summary judgment only on the portion of Count I that pertains to Abington's leasehold mortgage.  (Pl.'s Mot. Partial Summ. J. 14; Abington's Mot. Summ. J. 8-12.)[7]  Because the Court already ruled in its December 21, 2010 Memorandum and Order that Plaintiff's lease expired on December 31, 2009, this portion of Defendant's Motion is

---

  [7] Plaintiff, while reserving the right to appeal the Court's December 21, 2010 decision, has not moved for summary judgment on Defendant's request for a declaration that the Ground Lease expired on December 31, 2009.  (Pl.'s Mot. Partial Summ. J. 7-8.)

granted.

With respect to the second part of Count I, however, the Court finds that Defendant's request to have Abington's mortgage marked as satisfied is premature. Defendant argues that Abington's mortgage interest derives from the Ground Lease and, because the Lease has expired, Abington's interest has been terminated. (Def.'s Mot. Summ. J. Countercl. 7.) Abington responds that its mortgage entitles it to all of Plaintiff's rights in the leased premises, including Plaintiff's ownership interest in the Improvements on the property. (Abington's Resp. Opp'n 9.) Because Defendant has not yet purchased the Improvements from Plaintiff, Abington argues that it continues to hold a lien on Plaintiff's interest in the Improvements. (Id. at 10-11.)[8] The Court agrees. Even though the Ground Lease has expired, Plaintiff is still entitled to the value of the Improvements, and until Defendant purchases them, Abington's mortgage interest in the Improvements remains in effect. Defendant's Motion for Summary Judgment on its request for a declaration that Abington's mortgage is marked or satisfied is therefore denied, and Plaintiff and Abington's Motions for Summary Judgment on this request is granted.

**B.     Abington's Counterclaim**

   **1.     Abington's Request for Declaratory Relief**

Both Abington and Defendant move for summary judgment on all three counts of Abington's Counterclaim. (Abington's Mot. Summ. J. 8-15; Def.'s Mot. Summ. J. Abington's Countercl. 4-7.) Count I is a request for a declaration that: "(a) the Land Lease has not expired;

---

[8] Abington also argues that as long as Plaintiff continues to own the Improvements, it is entitled to receive rent from the Improvements. (Id. at 11.) The Court disagrees. Because Plaintiff cannot remain in possession of the Improvements and is no longer entitled to rent from TD Bank, it follows that Abington's right to receive rent – which derived from Plaintiff's Lease – has also been terminated.

(b) Abington continues to hold a leasehold mortgage interest; or, alternatively, if the Court determines that the Land Lease has expired, (c) that Abington maintains an interest in the Improvements and the rents from the Improvements, which has priority to any interest of Warminster Commerce." (Abington's Countercl. ¶ 38.)  With respect to the first part of Abington's request, the Court previously granted Defendant's Motion for Summary Judgment for a declaration that the Lease did in fact expire.  Furthermore, Plaintiff's Motion for Reconsideration of this judgment was denied.  Abington is apparently asking the Court to consider this issue for a third time, which the Court declines to do.  Abington's Motion for Summary Judgment on its request for a declaration that the Ground Lease has not expired is therefore denied, and Defendant's Motion for Summary Judgment is granted.

    Next, with respect to the status of Abington's leasehold interest, the Court addressed this issue above in its discussion of Defendant's request for a declaration that Abington's mortgage shall be marked as satisfied as released.  The Court found that until Defendant purchases the Improvements, Plaintiff and Abington have a continued interest in the Ground Lease, and Abington's mortgage will not be marked as satisfied until that transaction occurs.  The Court also found, however, that the Ground Lease does not state that Plaintiff may remain in possession of the Improvements pending the sale.  As such, neither Plaintiff nor Abington are entitled to any rent that has accrued from the Improvements since the Lease's expiration.  Abington's Motion for Summary Judgment on Count I of its Counterclaim is therefore denied and Defendant's Motion for Summary Judgment is granted with respect to the request for a declaration the Ground Lease remains in effect and that Abington is entitled to rent from the Improvements.  On the other hand, Abington's Motion for Summary Judgment is granted and Defendant's Motion

for Summary Judgment is denied with respect to the request for a declaration that Abington's leasehold mortgage interest remains in effect.

### 2. Conversion and Intentional Interference With Contractual Relations

Abington has included in its Counterclaim causes of action for conversion of collateral (Count II) and intentional interference with contractual relations (Count III). (Abington's Countercl. ¶¶ 39-46.) In Pennsylvania, "conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (quoting Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968)). "Money may be the subject of a conversion," but "only where the plaintiff had a property interest in the money at the time of the alleged conversion." Kia v. Imaging Sciences Int'l, Inc., 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (citations omitted). In order to prevail on a claim for interference with contractual relations, the plaintiff must demonstrate the following: "(1) a contractual relation; (2) purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damage resulting from defendant's conduct." Gundlach v. Reinstein, 924 F. Supp. 684, 693 (E.D. Pa. 1996) (citing Atl. Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1047 (E.D. Pa. 1994)).

Abington's claims stem from the fact that, after it had determined that the Ground Lease expired, Defendant contacted TD Bank with instructions to send to it the bank's future rent payments. Abington contends that Defendant acted unlawfully in making this request, because the rights to TD Bank's rent money had been assigned to it by Plaintiff. (Abington's Mot.

Summ. J. 12-18.)  As noted above, however, the Court has found that Plaintiff and Abington's right to receive revenue generated from the Improvements – such as TD Bank's rent – ended when the Lease expired.  Therefore, Defendant did not act without legal justification when it requested rent from TD Bank.  Abington's Motion for Summary Judgment on its Counterclaim for conversion and intentional interference with contractual relations is denied, and Defendant's Motion for Summary Judgment on these causes of action is granted.

IV.    **CONCLUSION**

For all of the foregoing reasons, the Court finds that the term "Improvements," as defined in the Ground Lease, refers to all buildings and other improvements located on the leased premises.  Plaintiff is entitled to the full fair market value of the Improvements – including the bank building currently occupied by TD Bank – but may not retain possession of or collect any rent from the Improvements pending their sale to Defendant.  The Court further finds that while the Ground Lease expired on December 31, 2009, Abington's leasehold mortgage with Plaintiff provided Abington with an interest in the Improvements.  Therefore, Abington's mortgage should not be marked as satisfied or released until those Improvements are sold.  Finally, even though Abington maintains an interest in the Improvements, its right to receive rent from TD Bank terminated when the Ground Lease expired.  Therefore, the Court finds that Defendant did not convert Abington's money or interfere with its contractual relations when it directed TD Bank to send its rent payments directly to Defendant.  In accordance with these findings, the parties' Motions for Summary Judgment are granted in part and denied in part as set forth in the accompanying Order.